CALDWELL LESLIE & PROCTOR, PC
LINDA M. BURROW, State Bar No. 194668
  burrow@caldwell-leslie.com
BENJAMIN B. AU, State Bar No. 237854
  au@caldwell-leslie.com
ARWEN R. JOHNSON, State Bar No. 247583
  johnson@caldwell-leslie.com
KIMBERLY M. SINGER, State Bar No. 279883
  singer@caldwell-leslie.com
725 South Figueroa Street, 31st Floor
Los Angeles, California 90017-5524
Telephone: (213) 629-9040
Facsimile: (213) 629-9022

ACLU FOUNDATION OF SOUTHERN CALIFORNIA
PETER ELIASBERG, State Bar No. 189110
  peliasberg@aclu-sc.org
1313 W. 8th Street
Los Angeles, California 90017
Telephone: (213) 977-9500
Facsimile: (213) 977-5297

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| REVEREND FATHER IAN ELLIOTT DAVIES; REVEREND J. EDWIN BACON, JR.; SHAKEEL SYED; RABBI HAROLD M. SCHULWEIS; REVEREND TERA LITTLE; RABBI JOHN ROSOVE; REVEREND PETER LAARMAN; DAVID N. MYERS; AND RABBI AMY BERNSTEIN, | Case No. CV14-0907-CAS (FFMx) |
| Plaintiffs, | **PLAINTIFFS' TRIAL BRIEF** |
| v. | **The Honorable Christina A. Snyder** |
| LOS ANGELES COUNTY BOARD OF SUPERVISORS; AND WILLIAM T FUJIOKA, | Trial Date:   November 10, 2015<br>Time:        9:30 a.m.<br>Place:       Courtroom 5 |
| Defendants. | |

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   OVERVIEW OF THE EVIDENCE .................................................... 2

    A.    The County Removed the Latin Cross From the Seal in 2004 in Acknowledgement of Its Religious Significance ............................... 2

    B.    Supervisors Antonovich and Knabe Continued to Use the 1957 Seal on Official County Materials After 2004 ..................................... 4

    C.    Upon a Motion Made by Supervisors Antonovich and Knabe, the County Added the Latin Cross to the Seal in 2014 .............................. 4

III.  PROCEDURAL BACKGROUND ...................................................... 6

IV.   PLAINTIFFS SUCCEED ON THE MERITS ................................... 6

    A.    The 2014 Seal Violates the California Constitution ............................ 7

        1.    This Court Must Address State Constitutional Issues First .......... 7

        2.    The 2014 Seal Violates California's No Aid Clause ................... 8

        3.    The 2014 Cross Violates California's No Preference Clause .................................................................................... 10

    B.    The 2014 Seal Violates the Federal Establishment Clause ................ 12

        1.    The Cross Was Added to the Seal for a Religious Purpose ....... 13

        2.    Adding the Cross on the Seal Has the Primary Effect of Advancing Christianity ............................................................. 15

        3.    Adding the Cross on the Seal Causes Excessive Entanglement with Religion ...................................................... 16

V.    THIS COURT MUST ENJOIN THE USE OF THE 2014 SEAL ................. 16

VI.   PLAINTIFFS' EVIDENCE IS RELEVANT AND ADMISSIBLE ............... 17

    A.    The "Objective Observer" Can Consider Preclude Plaintiffs' Evidence ............................................................................................ 17

        1.    The "Objective Observer" Standard Does Not Apply to Plaintiffs' State Law Claims ..................................................... 18

        2.    Plaintiffs' Evidence is Relevant Under the Correct Application of the "Objective Observer" Standard .................... 21

    B.    Plaintiffs' Evidence Does Not Constitute a "Heckler's Veto" ............ 23

C.  The Statements of County Employees are Party Admissions ..............24

D.  Defendants' Inexplicable Objection to Their Own Documents As Inauthentic Should Be Rejected Outright ...............................................25

VII.  CONCLUSION ...............................................................................................25

CALDWELL
LESLIE &
PROCTOR

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*ACLU v. City of Stow*,
   29 F.Supp.2d 845 (N.D. Ohio 1998) ................................................................. 15

*ACLU v. Garrard Cnty.*,
   517 F.Supp.2d 925 (E.D. Ky. 2007)............................................................. 21, 22

*ACLU v. Rabun Cnty. Chamber of Commerce, Inc.*,
   628 F.2d 1098 (11th Cir. 1983) ....................................................................... 16

*Am. Humanist Ass'n v. City of Lake Elsinore*,
   No. 5:13-cv-00989-SVW-OPx, 2014 WL 791800 (C.D. Cal. Feb.
   25, 2014) ..................................................................................................... 13, 22

*Barnes-Wallace v. City of San Diego*,
   704 F.3d 1067 (9th Cir. 2012) ............................................................................ 7

*Cal. Educ. Facilities Auth. v. Priest*,
   12 Cal.3d 593 (1974) ........................................................................................ 10

*Cal. Statewide Comm. Dev. Authority v. All Persons Interested in
   Matter of Validity of Purchase Agreement*,
   40 Cal.4th 788 (2007).............................................................................. 9, 19, 20

*Carpenter v. City & Cnty. of San Francisco*,
   93 F.3d 627 (9th Cir. 1996) .................................................................... 7, 11, 12

*East Bay Asian Local Dev. Corp. v. State of California*,
   24 Cal.4th 693 (2000)................................................................................... 7, 19

*Edwards v. Aguillard*,
   482 U.S. 578 (1987) .......................................................................................... 13

*Ellis v. City of La Mesa*,
   990 F.2d 1518 (9th Cir. 1993) ..................................................................*passim*

*Fox v. City of Los Angeles*,
   22 Cal.3d 792 (1978)................................................................................*passim*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALDWELL
LESLIE &
PROCTOR

-iii-

*Friedman v. Bd. of Cnty. Comm'rs*,
    781 F.2d 777 (10th Cir. 1985) ..................................................................... 15, 24

*Gonzales v. North Township*,
    4 F.3d 1412 (7th Cir. 1993) ............................................................................... 9

*Green v. Haskell Cnty. Bd. of Comm'rs*,
    568 F.3d 784 (10th Cir. 2009) .......................................................................... 22

*Harris v. City of Zion*,
    927 F.2d (7th Cir. 1991) .................................................................... 13, 15, 22

*Hewitt v. Joyner*,
    940 F.2d 1561 (9th Cir. 1991) ................................................................. *passim*

*Jewish War Veterans v. United States*,
    695 F.Supp. 3 (D.D.C. 1988) ........................................................................... 16

*Klein v. City of San Clemente*,
    584 F.3d 1196 (9th Cir. 2009) .......................................................................... 17

*Lemon v. Kurtzman*,
    403 U.S. 602 (1971) ........................................................................ 12, 13, 15, 24

*Lexington Ins. Co. v. W. Pa. Hosp.*,
    423 F.3d 318 (3d. Cir. 2005) ............................................................................ 25

*Marbury v. Madison*,
    5 U.S. 137 (1803) ............................................................................................ 20

*McCreary Cnty. v. ACLU*,
    545 U.S. 844 (2005) ................................................................................. *passim*

*Paulson v. City of San Diego*,
    294 F.3d 1124 (9th Cir. 2002) ................................................................. *passim*

*Rosenbaum v. City & Cnty. of San Francisco*,
    484 F.3d 1142 (9th Cir. 2007) .......................................................................... 24

*Sammartano v. First Judicial Dist. Court*,
    303 F.3d 959 (9th Cir. 2002) ................................................................ 1, 10, 17

*Sands v. Morongo Unified Sch. Dist.*,
    53 Cal.3d 863 (1991) ....................................................................................... 18

CALDWELL
LESLIE &
PROCTOR

*Santa Monica Nativity Scenes Comm. v. City of Santa Monica*,
   784 F.3d 1286 (9th Cir. 2015) ............................................................... 24

*Seattle Mideast Awareness Campaign v. King Cnty.*,
   781 F.2d 489 (9th Cir. 2015) ................................................................. 17

*Trunk v. City of San Diego*,
   629 F.3d 1099 (9th Cir. 2011) ................................................. 1, 9, 15, 24

*Vasquez v. Los Angeles Cnty.*,
   487 F.3d 1246 (9th Cir. 2007) ....................................................... 13, 23

*Vernon v. City of Los Angeles*,
   27 F.3d 1385 (9th Cir. 1994) ............................................................ 7, 16

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ............................................................................... 16

**Other Authorities**

Cal. Const. art. 1, § 4 ................................................................................ 10

Cal. Const. art. 16, § 5 ............................................................................... 8

Fed.R.Evid. 801(d)(2)(D) ........................................................................ 25

# I.      INTRODUCTION

This bench trial is about the Los Angeles County Board of Supervisors' decision to add a Latin cross in 2014 to the depiction of the San Gabriel Mission on the official County Seal (the "2014 Seal"), after removing the cross just ten years earlier in acknowledgement of its religious symbolism.  The evidence leaves no doubt that the Board's decision aids religion, evinces a government preference for Christianity, and was religiously motivated.  Indeed, as set forth below and in Plaintiffs' permanent injunction briefing, binding precedent dictates that the 2014 Seal violates the No Aid and No Preference Clauses of the California Constitution and the Establishment Clause of the United States Constitution:

- *First*, in adding the preeminent symbol of Christianity to the Seal, the County used its "power and prestige" and "devoted financial resources of the government to a sectarian purpose" in violation of California's No Aid Clause.  *See Paulson v. City of San Diego*, 294 F.3d 1124, 1133 (9th Cir. 2002) (en banc).

- *Second*, adding a cross to the Seal—the only change to the Seal—is an impermissible preference for Christianity, violating California's No Preference Clause.  *See Ellis v. City of La Mesa*, 990 F.2d 1518 (9th Cir. 1993).

- *Third*, the history and sequence of events leading to the supervisors' decision makes clear their articulated secular purpose for adding the cross is a sham, has the primary effect of endorsing Christianity, and causes excessive entanglement with religion in violation of the United States Establishment Clause.  *See Trunk v. City of San Diego*, 629 F.3d 1099 (9th Cir. 2011).

Because the record is clear the 2014 Seal is unconstitutional, Defendants resort to mischaracterizing the law, asking the Court to ignore relevant evidence, and otherwise attempting to distract from the real issues at hand.  Defendants' efforts to redefine the record notwithstanding, their actions aid and endorse Christianity to the exclusion of other faiths and non-believers, and must be enjoined.

CALDWELL
LESLIE &
PROCTOR

-1-

## II.   OVERVIEW OF THE EVIDENCE[1]

### A.   *The County Removed the Latin Cross From the Seal in 2004 in Acknowledgement of Its Religious Significance*

In 1957, the Board of Supervisors adopted an official County Seal which, among other things, depicted a Latin cross—the preeminent symbol of Christianity (the "1957 Seal"). Exh. 7[2]; *see also* Declaration of Jeffrey Siker, Dkt. No. 94 ("Siker Decl."), ¶¶ 4-15. The County included the cross on the 1957 Seal to represent the influence of the church and missions of California. *See* Exhs. 7, 8 at 62, 10, 12. Indeed, in his statutorily-required letter filing the 1957 Seal with the California Secretary of State, the Chief Clerk of the Board expressly stated that the cross was included on the 1957 Seal to represent "religion." Exh. 9.

The 1957 Seal served as the official Seal until 2004, when the ACLU sent a letter to County officials advising them that the presence of the cross on the Seal was unconstitutional. *See* Exhs. 11, 24 at 303-04. In response, the Board of Supervisors held public hearings on the removal of the cross from the Seal, during which the Board heard testimony from constituents who objected to the removal of the Latin cross on religious grounds. *See, e.g.*, Exhs. 13, 24. After hearing from these constituents, Supervisor Yvonne Burke stated at the June 8, 2004 hearing:

I'VE LISTENED HERE FOR A FEW HOURS AND I KEPT

---

[1] These facts are set forth in Plaintiffs' permanent injunction briefing, but are also included here for ease of reference. While Plaintiffs believe that these facts are sufficient for the Court to enter the requested injunction, as set forth below, Plaintiffs are prepared to introduce additional documentary and testimonial evidence and to cross-examine any witness on whose testimony Defendants rely at trial.

[2] Except where expressly noted otherwise, exhibits referenced in this brief are attached to the Declarations of Linda M. Burrow and Kimberly Singer, Dkt. Nos. 96 and 122, and correspond to their trial exhibit number. Pursuant to Local Rule 16-11.2(b), Plaintiffs have designated all declarations submitted with their permanent injunction briefing, as well as the Supplemental Declaration of Jill Vesci filed concurrently herewith, as direct testimony at trial.

THINKING THAT, IF THIS CASE GOES TO TRIAL, I WOULD
HATE FOR THEM TO PLAY THIS HEARING BECAUSE, IF
THERE'S ANY QUESTION OF WHAT WAS BEING MOVED
FORWARD AND WHAT THE OBJECTION WAS TO THE VOTE
THAT HAD BEEN TAKEN, IT WAS CLEARLY, IT WAS A
RELIGIOUS ONE.

Exh. 13 at 170. The Supervisors agreed to remove the cross and add a depiction of the eastern façade of the San Gabriel Mission (the "Mission") to the Seal, *see* Exhs. 24-25, 82-83, on which there was not cross at the time, because it was undergoing earthquake repairs (there were crosses on other parts of the Mission, including on the Mission's distinctive bell towers). *See* Declaration of Jill Vesci, Dkt. No. 95 ("Vesci Decl."), ¶¶ 33, 35; Declaration of Steven Hackel, Dkt. No. 99 ("Hackel Decl."), ¶¶ 67, 70, 77-78, 101; Declaration of John Dietler, Dkt. No. 98 ("Dietler Decl."), ¶¶ 29, 26; Declaration of Tim Coates, Dkt No. 110 ("Coates Decl."), ¶ 14, Exh. 13.

At a public hearing on September 14, 2004, Supervisor Michael Antonovich objected to the depiction of the Mission on the Seal without a cross:

WHAT IS DEPICTED IS A BACK DOOR, THE REAR END OF THE
CHURCH.  THAT IS NOT THE SYMBOL OF THE MISSION.  THE
SYMBOL OF THE MISSION WAS AN OPEN DOOR TO BRING
THE GOOD NEWS.

Exh. 24 at 288-89. Christians often refer to the gospel (the four books in the Bible that describe the life of Jesus Christ) as the "good news" of redemption through Jesus's life and death. *See* Declaration of Rev. Fr. Ian Elliot Davies, Dkt. No. 85 ("Davies Decl."), ¶ 4. The term "gospel" derives from Greek, Old English and Middle English words meaning "good news." *Id.*

Ultimately, the cross (along with certain other symbols) was removed from the Seal, replaced by a sketch of the eastern façade of the Mission—without a cross— and a Native American woman carrying a basket. *See* Exhs. 24 at 303-04, 25, 82-83.

1   The Board adopted this new seal as the official County Seal (the "2004 Seal").  *Id.*

2   **B.      Supervisors Antonovich and Knabe Continued to Use the 1957 Seal on**

3   **Official County Materials After 2004**

4   Supervisors Michael Antonovich and Don Knabe cast the two dissenting votes

5   against removing the cross from the Seal in 2004.  *See* Exhs. 24 at 304, 82.

6   Following the adoption of the 2004 Seal, they continued to use the 1957 Seal on

7   County materials created *after* the 2004 Seal was adopted.  *See* Exhs. 28-34, 85-87.

8   County employees understood that both Supervisors "prefer[red] to use" the 1957

9   Seal at official County events.  *See* Exh. 29.  Supervisor Knabe asked to have the

10   1957 Seal placed on booklets and plaques, *see* Exhs. 29-32, and complained when

11   the "new seal" with "no cross" was used at an event in his district.  *See* Exh. 33.

12   Knabe even hired an "outside graphics person to stripe in the old seal over" the 2004

13   Seal for official events.  *See* Exh. 31.  As the one county employee explained, this

14   practice "Keeps the CEO clean and SD4 [Supervisor Knabe] clean."  *See id.*

15   Supervisor Antonovich likewise requested and paid for official County

16   materials featuring the 1957 Seal.  *See* Exhs. 34, 85-87.  Then-County CEO William

17   T. Fujioka was aware Supervisors Knabe and Antonovich continued to use the 1957

18   Seal after the 2004 Seal was adopted.  *See* Exhs. 28-29, 32, 34.  Indeed, Supervisors

19   Antonovich and Knabe sought special permission from Mr. Fujioka for continued

20   use of the 1957 Seal, and he gave them his approval.  *See* Exhs. 28-29, 32.

21   **C.      Upon a Motion Made by Supervisors Antonovich and Knabe, the**

22   **County Added the Latin Cross to the Seal in 2014**

23   On December 31, 2013, Supervisors Antonovich and Knabe introduced a

24   motion to add the cross to the Seal, setting the vote on the motion for January 7,

25   2014—the first meeting after the County's holiday break.  *See* Exhs. 35-36.  The

26   motion proposed placing a cross atop the existing image of the Mission, noting that a

27   cross has been added to the eastern façade of the Mission in 2009.  Exh. 36.  The

28   motion stated the cross would be added for "historical and cultural" purposes.  *Id.*

CALDWELL
LESLIE &
PROCTOR

-4-

The motion proposed no other changes to the Seal. *Id.* The motion cited no confusion by constituents about the existing depiction of the Mission (without a cross) on the 2004 Seal. *Id.* The motion also did not address the accuracy of the other images on the 2004 Seal. *Id.* Nor did the motion acknowledge the evidence that a cross did *not* sit atop the eastern façade of the Mission for approximately the first 100 years of its existence. *See* Vesci Decl., Dkt No. 95, *passim.* And while the motion stated that "[t]he current rendering of the Mission on the seal is artistically and architecturally inaccurate,"[3] the motion failed to acknowledge that the proposed depiction of the Mission with the cross added was also not architecturally accurate. *Id.*, ¶¶ 37-41; Exh. 80 (excerpts from Deposition of John Dietler).

In the days leading to the vote on the motion, Supervisor Antonovich described, in emails to his constituents, those who opposed adding the cross to the Seal as "Storm Troopers [who] want to rewrite History – From Book burning to Church burning." Exh. 38. In response to a *Los Angeles Times* editorial condemning the motion, Supervisor Antonovich told one of his constituents that the *Times* is "Secular Extremest [sic]," and "Without God they became Utter fool [sic]." *See* Exhs. 46, 48. He also encouraged a constituent to buy the *Times* because, if not, "liberals will continue in attacking God, family, and freedom." *See* Exh. 49.

The motion came for a vote on January 7, 2014 and passed 3-2, with Supervisors Antonovich, Knabe, and Mark Ridley-Thomas voting for, and Supervisors Molina and Yaroslavsky voting against the motion. *See* Exhs. 52 at 35-36, 84. On January 15, 2014, CEO William Fujioka instructed County department heads to "use the new County Seal wherever possible and appropriate," *see* Exh. 67.[4]

The 2014 Seal is displayed prominently throughout the County. The County

---

[3] Defendants have never explained what it means to be "artistically . . . inaccurate."

[4] Mr. Fujioka even claimed to one journalist he had advised Supervisor Antonovich to add the cross to the Seal. *See* Declaration of Arwen Johnson ("Johnson Decl."), Exh. 130 (which has been designated as one of Plaintiffs' trial exhibits).

CALDWELL
LESLIE &
PROCTOR

PLAINTIFFS' TRIAL BRIEF

used public resources to design and implement the Seal, and it appears on County websites, buildings, stationary, pamphlets, and other official publications.  *See* Exhs. 26-27, 59-69, 83-84, Johnson Decl., Exh. 131; *see also* Declaration of Jho-An Ignacio, Dkt. No. 102 ("Ignacio Decl."), ¶¶ 2-5 & Exhs. 1-2; Declaration of David Sommers, Dkt. No. 103 ("Sommers Decl."), ¶¶ 2-7 & Exh. 1; Declaration of Gerardo Ramirez, Dkt. No. 104 ("Ramirez Decl."), ¶¶ 2-4 & Exhs. 1-2; Declaration of Adela Guzman, Dkt. No. 108 ("Guzman Decl."), ¶¶ 2-4.

There are no religious symbols from non-Christian faiths represented on the 2014 Seal.  *See* Exh. 59.

## III.   PROCEDURAL BACKGROUND

Plaintiffs are religious leaders and scholars who are offended by the addition of the cross to the 2014 Seal.  Plaintiffs filed this action on February 6, 2014, asserting claims under the No Aid and No Preference Clauses of the California Constitution and the Establishment Clause of the United States Constitution.

On June 3, 2014, and again in later 2014 and early 2015, Defendants voluntarily agreed to stay implementation of the 2014 Seal pending the outcome of this action (to avoid a preliminary injunction motion).  *See* Declaration of Linda M. Burrow ("Burrow Decl."), ¶¶ 50-53, Exhs. 57-58.  Defendants' promise was hollow, however:  the County expedited the Seal's implementation while the voluntary stay was being negotiated, and continues to use the 2014 Seal throughout the County. *See, e.g.*, Exhs. 59-69; *see also* Ignacio Decl., ¶¶ 2-5 & Exhs. 1-2 thereto; Sommers Decl., ¶¶ 2-7 & Exh. 1 thereto; Ramirez Decl., ¶¶ 2-4 & Exhs. 1-2 thereto; Guzman Decl., ¶¶ 2-4; Declaration of Frank Ozello, Dkt. No. 100 ("Ozello Decl."), ¶¶ 3-4.

## IV.   PLAINTIFFS SUCCEED ON THE MERITS

Plaintiffs' permanent injunction briefing explains, in great detail, why adding the preeminent symbol of Christianity to the County Seal violates the California and United States Constitutions.  Plaintiffs incorporate those arguments here in full, and also summarize the relevant legal framework and key evidence below.

A.     **The 2014 Seal Violates the California Constitution**

1.     **This Court Must Address State Constitutional Issues First**

Defendants concede, *see* Dkt. No. 97 at 4, that under the constitutional avoidance doctrine, this Court must adjudicate Plaintiffs' state constitutional claims before reaching their federal constitutional claim. *See Vernon v. City of Los Angeles*, 27 F.3d 1385, 1391-92 (9th Cir. 1994) ("It is well-established that [courts] should avoid adjudication of federal constitutional claims when alternative state grounds are available."). Indeed, because the provisions for religious freedom under the California Constitution are broader than under the United States Establishment Clause, the Court can enjoin the County's addition of the cross to the Seal based on Plaintiffs' state constitutional claims alone. *See, e.g.*, *Hewitt v. Joyner*, 940 F.2d 1561, 1565 (9th Cir. 1991) (holding that the county's ownership of a park featuring religious statues violated California's No Aid and No Preference Clauses and declining to address federal constitutional claims); *Fox v. City of Los Angeles*, 22 Cal.3d 792, 801 (1978) (Bird, C.J., concurring) (observing that California's No Aid Clause "does not mirror or derive from any part of the federal Constitution"); *Carpenter v. City & Cnty. of San Francisco*, 93 F.3d 627, 629-32 (9th Cir. 1996) (declining to reach plaintiff's federal constitutional claims "[b]ecause we hold that the Cross violates the No Preference Clause" and "the religion clauses of the California Constitution are read more broadly than their [federal] counterparts").[5]

_____

[5] Defendants, based on dicta in *Barnes-Wallace v. City of San Diego*, 704 F.3d 1067 (9th Cir. 2012), claim that California's No Preference Clause is not broader than the federal Establishment Clause. As Plaintiffs explained in their permanent injunction briefing and again below (*see* Section VI.A.1), that claim is based on a misreading of the California Supreme Court's decision in *East Bay Asian Local Dev. Corp. v. State of California*, 24 Cal.4th 693 (2000), which did not even construe the No Preference Clause. In any event, because California's No Preference Clause remains at least as broad as, if not broader than, the federal Establishment Clause, the constitutional avoidance doctrine dictates that the Court should consider that claim first. *See Ellis*, 990 F.2d at 1524 (enjoining display of crosses under the No Preference Clause and

### 2. The 2014 Seal Violates California's No Aid Clause

According to the No Aid Clause of the California Constitution, "[n]either the Legislature, nor any county . . . shall ever make an appropriation, or pay from any public fund whatever, or grant anything to or in aid of any religious sect, church, creed or sectarian purpose." Cal. Const. art. 16, § 5. The No Aid Clause has such "enormous breadth" that it "forbids more than the . . . payment of public funds"—it "bans any official involvement, whatever its form" that promotes religion, regardless of the purpose for its involvement. *Paulson*, 294 F.3d at 1129-30; *see also Fox*, 22 Cal.3d at 806 (the No Aid Clause "admits of no *de minimis* exception"). The No Aid Clause thus prohibits the government from: (1) granting a benefit in any form (2) to any sectarian purpose (3) regardless of the government's secular purpose (4) unless the benefit is available on an equal basis to those with sectarian and those with secular objectives" and therefore "properly characterized as indirect, remote, or incidental." *Paulson*, 294 F.3d at 1131-33. "The phrase 'sectarian purpose' merely connotes a sectarian use rather than a subjective state of mind." *Id.* at 1132 n.5.

There can be no question that adding a Latin cross to the County Seal constitutes impermissible aid to religion that violates the No Aid Clause. Indeed, the salient facts are undisputed: (1) the cross is the preeminent symbol of Christianity, Siker Decl., ¶¶ 4-15; (2) Defendants removed the cross from the Seal in 2004 and replaced it with a depiction of the Mission, which they chose because it did *not* have a cross, *see* Exhs. 7-12, 24, 82-83; and (3) ten years later, Defendants added the cross, at County expense, while making no other changes to the Seal, *see, e.g.*, Exhs. 26-27, 59-69, 83-87.

These undisputed facts demonstrate that the County used its "power and prestige" and "devoted financial resources of the [] government to [the] sectarian

_____

declining to analyze federal claims); *Hewitt*, 940 F.2d at 1565 (declining to address federal constitutional claims where display of religious statues in county park violated No Preference Clause).

PLAINTIFFS' TRIAL BRIEF

purpose" of promoting Christianity, and thus violated the No Aid Clause. *Paulson*, 294 F.3d at 1133; *see also Hewitt*, 940 F.2d at 1571 (holding that a county park containing religious statues violated No Aid Clause where the county "holds the deed to the park and pays for its maintenance"); *Fox*, 22 Cal.3d at 805-06 (holding that display of illuminated cross on Los Angeles City Hall violated No Aid Clause).

Defendants have no real response to this evidence, other than to argue there may have been non-sectarian reasons the Supervisors might have wanted to include an image of the San Gabriel Mission on the Seal. Even assuming these non-sectarian reasons were true, however—and as demonstrated below, *see* Section IV.B.1, they are not—they are irrelevant to the No Aid Clause analysis, as there is no dispute that adding a Latin cross to the County Seal *is* sectarian and thus violates the No Aid Clause. *See, e.g.*, *Paulson*, 294 F.3d at 1130 ("[E]ven a government act that has a secular purpose can violate [the No Aid Clause] if it also has a direct, immediate, and substantial effect of promoting a sectarian purpose."); *cf. Trunk*, 629 F.3d at 1110 (citing *Gonzales v. North Township*, 4 F.3d 1412, 1418 (7th Cir. 1993) ("We are masters of the obvious, and we know that the crucifix is a Christian symbol.")).

Defendants attempt to deflect the Court's attention by arguing that because *missions* are an important part of California history and are taught, sometimes with photographs of missions bearing crosses, in public schools, the benefit of adding a Latin cross to the Seal is somehow rendered "incidental." The issue is not, however, whether a depiction of a mission should be included in a public-school history textbook, but whether by adding the Latin cross—and no other symbol—to the Seal, Defendants have given more than an "incidental" benefit to the Christian religion. *See Paulson*, 294 F.3d at 1131 (a sectarian benefit "may qualify as 'incidental' if the benefit is available on an equal basis to those with sectarian and those with secular objectives"). Binding precedent establishes that the benefit to Christianity is more than incidental. *See, e.g.*, *Cal. Statewide Comm. Dev. Authority v. All Persons Interested in Matter of Validity of Purchase Agreement*, 40 Cal.4th 788, 801 (2007)

CALDWELL
LESLIE &
PROCTOR

-9-

(to satisfy the No Aid Clause, the government action must be available to "both secular and sectarian institutions on an equal basis"); *Cal. Educ. Facilities Auth. v. Priest*, 12 Cal.3d 593, 604 (1974) (the No Aid Clause is "the definitive statement of the principle of government impartiality in the field of religion").

### 3.     The 2014 Cross Violates California's No Preference Clause

California's No Preference Clause guarantees the "[f]ree exercise and enjoyment of religion without discrimination or preference."  Cal. Const. art. 1, § 4. Thus, "[g]overnments must commit themselves to 'a position of neutrality] whenever 'the relationship between man and religion is affected.'"  *Fox*, 22 Cal.3d at 798.

The Ninth Circuit has articulated a five-factor test to determine whether a religious display violates the No Preference Clause:  (1) religious significance of the display; (2) size and visibility of the display; (3) inclusion of other religious symbols; (4) historical background of the display; and (5) proximity of the display to government buildings or religious facilities.  *Ellis*, 990 F.2d at 1525-26.  Similar to the No Aid Clause, the No Preference Clause is violated even if Defendants were able to articulate a legitimate "secular purpose" for adding the cross to the Seal (which, as described in Section IV.B.1 below, they are not), as "the no preference clause is not satisfied by a secular purpose."  *Hewitt*, 940 F.2d at 1569 (holding that county park that contained religious statues violated No Preference Clause regardless of county's intentions to maintain "park for tourism reasons and to memorialize a locally well-known artist"); *see also Ellis*, 990 F.2d at 1528 (the government's purported secular purpose for adding the cross on the city's insignia was insufficient to "lessen the preference the insignia exhibits for Christianity").

Applying the *Ellis* factors, it is clear that adding the cross to the 2014 Seal violates the No Preference Clause:

*First*, it is undisputed that the Latin cross conveys the exclusively Christian message of Christ's crucifixion and resurrection.  *See Ellis*, 990 F.2d at 1525.  *See*, *e.g.*, Davies Decl., ¶ 6; Declaration of Rev. J. Edwin Bacon, Jr., Dkt. No. 86 ("Bacon

1  Decl."), ¶ 6; Declaration of Shakeel Syed, Dkt. No. 87 ("Syed Decl."), ¶¶ 4-6;
2  Declaration of Rev. Tera Little, Dkt. No. 88 ("Little Decl."), ¶ 4; Declaration of
3  Rabbi John Rosove, Dkt. No. 89 ("Rosove Decl."), ¶ 4; Declaration of Peter
4  Laarman, Dkt. No. 90 ("Laarman Decl."), ¶¶ 4-10; Declaration of David N. Myers,
5  Dkt. No. 91 ("Myers Decl."), ¶¶ 7-12; Declaration of Rabbi Amy Bernstein, Dkt. No.
6  92 ("Bernstein Decl."), ¶ 4; Exh. 70 at 153; Exh. 71; Siker Decl., ¶¶ 4-15;
7  Declaration of Michael Gonzalez, Dkt. No. 95 ("Gonzalez Decl."), *passim*.

8       *Second*, there are no comparable symbols of other religious faiths on the Seal
9  to moderate the cross's sectarian message. *See Ellis*, 990 F.2d at 1527. Rather, the
10  *only* change to the 2014 Seal was to add the Latin cross. *See* Exhs. 25, 35-36, 59;
11  *Hewitt*, 940 F.2d at 1569 (finding religious statues in County park to be "exclusively
12  . . . biblical figures and scenes from the New Testament"); *Fox*, 22 Cal.3d at 797
13  (illuminating the Latin cross to the exclusion of other religious symbols constitutes
14  an unlawful preference, even when "comparable recognition of other religious
15  symbols is impracticable").

16       *Third*, the historical significance and religious symbolism of adding the cross
17  to the Seal are inextricably intertwined. As discussed in Plaintiffs' permanent
18  injunction briefing and again below, the evidence shows unequivocally that adding
19  the cross to the Seal was religiously motivated. *See, e.g., Carpenter*, 93 F.3d at 631
20  (the "long history" of the area around the Cross being used "as a site for Easter
21  services and other Christian rituals . . . simply exacerbates the appearance of
22  government preference for a particular religion") (citation and internal quotation
23  mark omitted); *Fox*, 22 Cal.3d at 795-97 (finding no historical independence when,
24  among other things, the cross had been illuminated "to commemorate the Eastern
25  Orthodox Easter in response to demands from members of that faith"). The evidence
26  also shows that, despite Defendants' unsupported assertions otherwise, the Mission
27  on the Seal "will retain its historical significance with or without a cross atop it," *see*
28  *Carpenter*, 93 F.3d at 631, and that the primary reason for adding the cross is

1  religion—not purported historical or architectural accuracy.[6]

2  *Fourth*, Defendants cannot dispute that the 2014 Seal is displayed prominently

3  on government property throughout the County.  *See* Exhs. 59-69; *see also* Ignacio

4  Decl., ¶¶ 2-5 & Exhs. 1-2 thereto; Sommers Decl., ¶¶ 2-7 & Exh. 1 thereto; Ramirez

5  Decl., ¶¶ 2-4 & Exhs. 1-2 thereto; Guzman Decl., ¶¶ 2-4.  Indeed, the evidence

6  indicates that the CEO took steps to hasten its implementation.  *See* Exhs. 67-69;

7  *Ellis*, 990 F.2d at 1528 (city insignia was "particularly troubling" where it was

8  "attached to uniforms, included on official correspondence" and "prominently

9  displayed" throughout the City).

10     As the relevant factors demonstrate, adding a cross to a depiction of the

11  Mission that did not previously include a cross is an inherently religious act.  It

12  evinces an impermissible preference for religion—and for one religion above all

13  others—and thus violates California's No Preference Clause.

14          **B.     The 2014 Seal Violates the Federal Establishment Clause**

15     Because the 2014 Seal violates the California Constitution, the Court need not

16  separately address Plaintiffs' federal Establishment Clause claim.  *See Carpenter*, 93

17  F.3d at 632.  But even if the Court undertakes the Establishment Clause inquiry, the

18  outcome is the same, as the record demonstrates that the County's actions were

19  (i) motivated by a religious purpose, (ii) have the primary effect of advancing

20  religion, and (iii) cause excessive entanglement with religion.  *See Lemon v.*

21  *Kurtzman*, 403 U.S. 602, 612-13 (1971) (identifying the three prongs of the

22

23

24  [6] Indeed, adding the cross to the depiction of the Mission is neither historically nor
architecturally accurate, as the available evidence indicates there was no cross on the
eastern façade of the Mission for approximately its first 100 years.  *See* Vesci Decl.,

25  *passim*.  Defendants' experts, neither of whom are architects, let alone architectural
historians, have attempted to explain away the evidence that a cross was not present

26  on the Mission.  As set forth in detail in the Supplemental Declaration of Jill Vesci

27  filed concurrently herewith, Defendants have no credible basis for this assertion.

28

CALDWELL
LESLIE &
PROCTOR

-12-

PLAINTIFFS' TRIAL BRIEF

analysis); *Edwards v. Aguillard*, 482 U.S. 578, 583 (1987) ("State action violates the Establishment Clause if it fails to satisfy any of these prongs.").

### 1. The Cross Was Added to the Seal for a Religious Purpose

The 2014 Seal violates the first prong of the *Lemon* test because the record makes clear that the supervisors' articulated purpose for adding the cross to the Seal—historical and cultural accuracy—is a sham. *See Am. Humanist Ass'n v. City of Lake Elsinore*, No. 5:13-cv-00989-SVW-OPx, 2014 WL 791800, at *9-11 (C.D. Cal. Feb. 25, 2014) (rejecting city's stated "historical" purpose for adding a cross to a war memorial where comments made by the major, councilmembers and individual constituents provide that the cross "was to symbolize . . . the Country's status as a Christian nation"); *see also Harris v. City of Zion*, 927 F.2d, 1401, 1413-14 (7th Cir. 1991) (finding that the council's stated "historical" purpose was a sham where "explicit religious design [was] behind the seal's original adoption").

Indeed, the record is replete with evidence that the Supervisors' decision to add the cross to the Seal was religiously motivated:

- The cross was explicitly included on the 1957 Seal for religious reasons, *see* Exhs. 7, 8 at 62, 9-10, 12;

- The Board voted in 2004 to remove the cross in acknowledgement of its religious significance, *see*, *e.g.*, *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1257 (9th Cir. 2007) (the cross was removed from the Seal in 2004 in "an effort to restore…neutrality and to ensure…continued compliance with the Establishment Clause"); Davies Decl., ¶ 4; Exhs. 11, 24, 82-83.

- At the time the Board voted in 2004 to add a depiction of the Mission without a cross on the Seal, there were crosses on the Mission, yet the Supervisors elected to use a depiction of the Eastern façade, which did not have a cross; *see* Exhs. 24 at 303-04, 25, 82-83, Vesci Decl., ¶¶ 33, 35; Hackel Decl., ¶¶ 67, 70, 77-78, 101; Dietler Decl., ¶¶ 29, 36; Coates Decl., ¶ 14.

- At the time the Board voted in 2004 to remove the cross from the Seal,

constituents objected to its removal on religious grounds, *see* Exhs. 13-23;

- At a public hearing on September 14, 2004, Supervisor Antonovich objected to the depiction of the Mission without a cross because "[t]he symbol of the mission was an open door to bring the good news," *see* Exh. 24 at 288-89;

- Supervisors Knabe and Antonovich took extra pains to use, and sought (and received) permission from the County CEO to use, the 1957 Seal on official County materials, *see* Exhs. 28-34, 85-87;

- The motion to add the cross to the 2014 Seal proposed no other changes to the Seal, cited no confusion by constituents about the depiction of the San Gabriel Mission (without a cross) on the 2004 Seal, and did not address the historical or cultural accuracy of the other images on the 2004 Seal, *see* Exhs. 35-36;

- There is evidence that the cross did not sit atop the eastern façade of the Mission for approximately the first 100 years of its existence, *see* Vesci Decl. & Supplemental Declaration of Jill Vesci, *passim*;

- The only change that was made to the Seal in 2014 was to add a Latin cross, *see, e.g.*, Exhs. 35-36, 52 at 35-36, 59, 84;

- The Latin cross is the only religious symbol on the 2014 Seal, *see* Exh. 59;

- The depiction of the cross on the 2014 Seal is not architecturally accurate, *see* Vesci Decl., ¶¶ 37-41, Exh. 80; and

- Supervisors Antonovich and Knabe made statements to their constituents about the removal and addition of the cross to the Seal that convey the message that Christianity is favored, *see, e.g.*, Exhs. 8 at 62, 24 at 288-89, 38, 42-43, 46-49, 51, 89.

All of this evidence sets forth "the context in which [the decision to add the cross to the Seal] arose" and is part of the history and "sequence of events" this Court considers in discerning the County's true purpose. *McCreary Cnty. v. ACLU*, 545 U.S. 844, 866 (2005) (the purpose inquiry is conducted through the eyes of the "objective observer," who is "presumed to be familiar with the history of the

1  government's actions and competent to learn what history has to show").  The

2  evidence speaks for itself and demonstrates that the decision to add a cross to the

3  Seal just a few years after it had been removed was, and was communicated to

4  constituents as, religiously motivated.

5           **2.     Adding the Cross on the Seal Has the Primary Effect of**

6                   **Advancing Christianity**

7           Adding the cross to the Seal also violates the second prong of the *Lemon* test

8  because it "sends the stigmatic message to nonadherents 'that they are outsiders, not

9  full members of the political community, and an accompanying message to adherents

10 that they are insiders, favored members."   *Trunk*, 629 F.3d at 1109, 1119 n.19, 1120

11 (finding an Establishment Clause violation where "[t]he starkly religious message of

12 the Cross's supporters would not escape the notice of the reasonable observer" and

13 "cannot be ignored in assessing the history and context of the Cross").  As Plaintiffs

14 and their experts have testified, the addition of the cross to the Seal sends an anti-

15 non-Christian message, and there is ample evidence that the public perceived the

16 addition of the cross to the Seal as an endorsement of religion.  *See*, *e.g*., Exhs. 38-

17 51, 52 at 24, 53-55; *Friedman v. Bd. of Cnty. Comm'rs*, 781 F.2d 777, 779-81 (10th

18 Cir. 1985) (finding the evidence to lead "the average observer to the conclusion that

19 the county government was 'advertising' the Catholic faith" where a rabbi,

20 community members and experts testified about the symbolism and divisiveness of

21 the cross).  Contrary to Defendants' assertions, the presence of other, non-religious,

22 symbols on the Seal does not mitigate this endorsement of Christianity.  *See*, *e.g*.,

23 *Harris*, 927 F.2d at 1412 (concluding that other images on a seal do not neutralize

24 the cross where "[t]o any observer, the [city] seal expresses the City's approval of

25 those four pictures of City life—its flora, its schools, its industry and commercial

26 life, and its Christianity"); *ACLU v. City of Stow*, 29 F.Supp.2d 845, 851 (N.D. Ohio

27 1998) (irrelevant that "seal bears 'emphatically nonreligious symbols' in the

28 remaining three quadrants").

CALDWELL
LESLIE &
PROCTOR

PLAINTIFFS' TRIAL BRIEF

3.     **Adding the Cross on the Seal Causes Excessive Entanglement with Religion**

Finally, the County's use of public resources to finance and implement the 2014 Seal constitutes excessive entanglement with religion in violation of *Lemon's* third prong.  *See*, *e.g*., *Jewish War Veterans v. United States*, 695 F.Supp. 3, 14 (D.D.C. 1988) (finding excessive entanglement where government used public funds to maintain memorial cross).  The political divisiveness caused by the decision to add a cross on the Seal, after removing it only a decade earlier in acknowledgement of its religious message, is further evidence of this entanglement.  *See*, *e.g*., Exhs. 11-24, 38-51; *McCreary*, 545 U.S. at 881 (pointing out the "divisiveness of religion in current public life" and observing "this is no time to deny the prudence of understanding the Establishment Clause to require the Government to stay neutral on religious belief, which is reserved for the conscience of the individual"); *Jewish War Veterans*, 695 F.Supp. at 14 (noting a "government act is more likely to be found unconstitutional if it generates religion-based political division," including any "polarization of the community"); *see also Vernon*, 27 F.3d at 1401 (observing that the existence of political divisiveness resulting from government action "may be evidence that institutional entanglement is excessive"); *ACLU v. Rabun Cnty. Chamber of Commerce, Inc*., 628 F.2d 1098, 1109-10 (11th Cir. 1983) (affirming ruling that "the presence of the cross created a potential for political divisiveness").

**V.     THIS COURT MUST ENJOIN THE USE OF THE 2014 SEAL**

Because Plaintiffs succeed on the merits, they are entitled to a permanent injunction, as the evidence is clear (i) they are likely to suffer irreparable harm in the absence of relief; (ii) the balance of equities tips in their favor; and (iii) an injunction is in the public interest.  *See Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008) (elements for injunction).  Indeed, Defendants do not address, and thus concede, in their permanent injunction briefing these elements are met.  Dkt. No. 97.

The Ninth Circuit has made clear that the loss of constitutional freedoms,

1    "even for minimal periods of time, unquestionably constitutes irreparable injury."

2    *See, e.g.*, *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cir. 2009) (finding

3    irreparable harm where city's anti-littering ordinance violated plaintiff's rights under

4    the California Constitution and First Amendment).  And because Plaintiffs raise

5    serious First Amendment questions, "the balance of hardships tips sharply in their

6    favor."  *See Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 973 (9th Cir.

7    2002) (internal quotation marks and citation omitted), abrogated on other grounds by

8    *Seattle Mideast Awareness Campaign v. King Cnty.*, 781 F.2d 489 (9th Cir. 2015).

9    Finally, a permanent injunction is in the public interest because all citizens have a

10   stake in upholding the Constitution.  *See, e.g.*, *Sammartano*, 303 F.3d at 974

11   (recognizing "the significant public interest in upholding First Amendment

12   principles").  The Court must therefore enjoin Defendants from implementing and

13   displaying the cross on the 2014 Seal.

14   **VI.   PLAINTIFFS' EVIDENCE IS RELEVANT AND ADMISSIBLE**

15            Faced with an evidentiary record that establishes their conduct is

16   unconstitutional, Defendants have taken the extreme position that the Court is barred

17   from considering virtually *any* evidence of the context—the actual events and

18   circumstances—in which the Supervisors reached their decision to add the cross to

19   the Seal.[7]  Despite Defendants' futile attempts to limit the record, Plaintiffs' evidence

20   is plainly admissible and relevant, and leaves no doubt that the addition of the cross

21   to the County Seal aids religion, evinces a government preference for Christianity,

22   and was religiously motivated.

23            **A.       The "Objective Observer" Can Consider Preclude Plaintiffs' Evidence**

24            The County's defense rests almost entirely on two mischaracterizations of the

25   law—first, that the "objective observer" standard set forth in *McCreary*, which

26   _____

27   [7] Ironically, although Defendants seek to exclude *Plaintiffs'* evidence of the context
     in which the cross was added to the Seal, they claim in their Opposition to Plaintiffs'

28   Motion for Preliminary Injunction that "context is everything."  *See* Dkt. No. 97 at 1.

CALDWELL
LESLIE &
PROCTOR

PLAINTIFFS' TRIAL BRIEF

governs the "purpose" prong of the federal *Establishment Clause* analysis, also governs Plaintiffs' claims under California's No Aid and No Preference Clauses; and second, that the "objective observer" standard restricts this Court's ability to consider virtually any evidence outside the transcripts of Board hearings.  As set forth in Plaintiffs' permanent injunction briefing, the objective observer standard does not even apply to Plaintiffs' claims under the No Aid or No Preference Clauses of the California Constitution, and when it is applied correctly to the federal Establishment Clause claim, it is readily apparent that Plaintiffs' evidence is relevant and establishes adding the cross to the Seal is unconstitutional.

### 1. The "Objective Observer" Standard Does Not Apply to Plaintiffs' State Law Claims

Defendants' attempt to graft the "objective observer" standard onto the No Aid Clause claim is contrary to binding precedent.  As set forth above, the No Aid Clause prohibits the government from:  (1) granting a benefit in any form (2) to any sectarian purpose (3) regardless of the government's secular purpose (4) unless the "benefit is available on an equal basis to those with sectarian and those with secular objectives" and therefore "properly characterized as indirect, remote, or incidental." *Paulson*, 294 F.3d at 1131-33.  These factors do not contemplate the application of a reasonable observer standard, and the courts applying them do not engage in a reasonable observer analysis.  *See Hewitt*, 940 F.2d at 1571 (a county park containing religious statues violated No Aid Clause despite county's "assertion that the park" promotes tourism); *Sands v. Morongo Unified Sch. Dist.*, 53 Cal.3d 863, 913-14 (1991) (Mosk, J., concurring) (government sponsorship of public-school prayer ceremonies has a "direct and immediate effect of promoting religious purposes" as they are viewed "as state endorsement of the religious views embodied in those prayers, and as a tacit rejection of inconsistent views").

Defendants fail to cite a single case—and Plaintiffs are unaware of any—in which the "objective observer" standard was applied to the No Aid Clause analysis.

1   To the contrary, the cases make clear that, in analyzing the No Aid Clause claim, the

2   Court may consider *all* evidence which tends to show that, in adding the cross to the

3   Seal, the County used its "power and prestige" and "devoted financial resources of

4   the [] government to [the] sectarian purpose" of promoting Christianity.  *See*

5   *Paulson*, 294 F.3d at 1133; *Fox*, 22 Cal.3d at 806 ("The ban is on aid to religion in

6   *any* form."); *Hewitt*, 940 F.2d at 1571 (considering evidence that "[e]ach plaintiff

7   was surprised and disturbed by the apparent endorsement the County was giving to

8   the religious message of [the] statues").  Such evidence includes, for example,

9   Plaintiffs' evidence of the resources the County devoted to ensuring a cross was on

10  the Seal, and the efforts Supervisors Antonovich and Knabe took to maintain a cross

11  on the Seal and guarantee that the version of the Seal depicting the cross was used at

12  official County events.  *See* Exhs. 26-34, 59-69, 85-87.  It also includes evidence that

13  then-County CEO, William Fujioka, gave special permission to Supervisors

14  Antonovich and Knabe to break policy and continue to use the 1957 Seal after the

15  2004 Seal was adopted.  *See* Exhs. 28-29, 31; *see also* Exh. 130.  Applying the

16  correct standard to Plaintiffs' No Aid Clause claim, Plaintiffs are entitled to

17  introduce, and this Court should consider, all documentary and testimonial

18  evidence—including testimony from the Plaintiffs, the supervisors and Mr.

19  Fujioka—that tends to show the County aided religion in adding the cross.

20        Similarly misguided is Defendants' argument that Plaintiffs' No Preference

21  Clause Claim cannot be analyzed separately from their federal Establishment Clause

22  claim and is thus also subject to *McCreary's* "objective observer" standard.

23  Contrary to Defendants' assertions, the California Supreme Court has *not* definitively

24  construed the No Preference Clause to be co-extant with the federal Establishment

25  Clause.  *See East Bay*, 24 Cal.4th at 719 (observing that the Supreme Court had

26  "never had occasion to definitively construe the no preference clause . . . *and we*

27  *need not do so here*") (emphasis added).  Indeed, to hold the No Preference and

28  Establishment Clauses to be the same would read the No Preference Clause out of

the California Constitution entirely, which the Court may not do.  *See*, *e.g.*, *Marbury v. Madison*, 5 U.S. 137, 174 (1803) ("It cannot be presumed that any clause in the constitution is intended to be without effect; and therefore such a construction is inadmissible, unless the words require it.").  It would also run contrary to established and binding Ninth Circuit precedent holding that the "no preference clause is not satisfied by a secular purpose."  *Hewitt*, 940 F.2d at 1569; *see also Ellis*, 990 F.2d. at 1528 (the government's purported secular purpose for adding the cross on city's insignia was insufficient to "lessen the preference the insignia exhibits for Christianity").

Instead, under the five-factor test set forth in binding Ninth Circuit precedent, *see Ellis*, 990 F.2d. at 1525, the Court may consider *all* evidence that tends to show the County gave the Christian religion preferential treatment in adding the cross to the 2014 Seal.  This includes Plaintiffs' testimony that adding the cross conveys a powerful pro-Christian, and anti-non-Christian, message.  *See*, *e.g.*, Siker Decl., ¶¶ 4-14; Gonzalez Decl., *passim*; Davies Decl., ¶ 6; Bacon Decl."), ¶ 6; Syed Decl., ¶¶ 4-6; Little Decl., ¶ 4; Rosove Decl., ¶ 4; Laarman Decl., ¶¶ 4-10; Myers Decl., ¶¶ 7-12; Bernstein Decl., ¶ 4.  This also includes Plaintiffs' evidence that the historical significance of adding the cross to the Seal cannot be divorced from its religious symbolism—including, for example, evidence of the Supervisors' religious purpose in adding the cross, and the association of the cross on the Mission with the history of forced conversions of native populations and what Defendants' expert, Steven Hackel, described as "a period of dramatic and even calamitous change for many Indians, especially those in California."  *See* Exh. 71.[8]

---

[8] This history of forced conversions is also discussed in the fourth grade history textbooks on which Defendants base much of their defense.  *See*, *e.g.*, Exh. 91 ("Missionaries used different ways of making California Indians convert to Catholicism and act like Spanish people.").

### 2. Plaintiffs' Evidence is Relevant Under the Correct Application of the "Objective Observer" Standard

Even assuming the Court reaches Plaintiffs' federal Establishment Clause claim, Defendants' effort to have this Court exclude objectively observable evidence of the Supervisors' intent fails. Defendants argue that this Court, as an "objective observer," may only consider the so-called "public record" in this case—by which Defendants mean only statements in official public hearings. Dkt. Nos. 97, 119, 127.

*McCreary*, however, is nowhere near that narrow. Rather, as the Supreme Court explained, courts may not psychoanalyze County officials' personal and private views by speculating as to their "heart of hearts." 545 U.S. at 861-62. Courts may, however, in their role as an "objective observer," consider far more than the "official" record in deducing a County's purpose, including: (i) the plain language of the enactment itself; (ii) any readily discoverable facts; (iii) traditional external signs in the text; (iv) legislative history, and implementation of the statute or other enactment; comparable official acts; (v) context and contemporaneous legislative history; (vi) historical context of the enactment; (vii) the specific sequence of events leading to the enactment's passage; (viii) public comments of an enactment's sponsor; and (ix) other openly available data. *Id.* at 863-66 (the objective observer "in the endorsement inquiry must be deemed aware of the history and context of the community and forum in which the religious display appears" and "competent to learn what that history has to show"); *see also*, *e.g.*, *ACLU v. Garrard Cnty.*, 517 F.Supp.2d 925, 942 (E.D. Ky. 2007) (in accordance with *McCreary*, the court "cannot only consider the county's stated purpose in isolation; if there is evidence that the stated purpose is a sham, the Court is not required to take it at face value").

Indeed, the *McCreary* Court expressly rejected the counties' arguments in that case to look only at the stated secular purpose:

> Counties would read the cases as if the purpose enquiry were so naïve
>
> that any transparent claim to secularity would satisfy it, and they would

1    cut context out of the enquiry, to the point of ignoring history, no matter

2    what bearing it actually had on the significance of current

3    circumstances.  There is no precedent for the Counties' arguments, or

4    reason[s] supporting them.

5    *McCreary*, 545 U.S. at 863-64.

6         Just like the defendants in *McCreary*, Defendants here would have this Court

7    turn a blind eye to any evidence other than their stated secular purpose for adding the

8    cross to the Seal.  As the *McCreary* Court explained, the inquiry is not that naïve.

9    Indeed, if Defendants were correct, then only those lawmakers who expressly, and in

10   an official and public meeting, articulated a sectarian purpose for their acts could

11   ever be found to have violated *Lemon's* purpose prong.  As *McCreary* and its

12   progeny recognize, however, it is the Court's duty—looking at all of the readily

13   available data—to determine whether the government's stated purpose is a sham.

14   *See*, *e.g*., *id.* at 871-72 (rejecting the counties' third attempt to display the Ten

15   Commandments as part of a "Foundations Display," explaining that "[n]o reasonable

16   observer could swallow the claim that the Counties had cast off the objective so

17   unmistakable in their earlier displays"); *Harris*, 927 F.3d at 1413-14 (finding sham

18   purpose where "explicit religious design [was] behind the seal's original adoption in

19   1902" notwithstanding the "perfunctory appeal to history" in the council's meeting

20   minutes); *Am. Humanist*, 2014 WL 791800, at *10-11 (concluding that government's

21   stated purpose was a sham where sponsors' earlier statements and actions suggested

22   purpose was religious); *Green v. Haskell Cnty. Bd. of Comm'rs*, 568 F.3d 784, 801

23   (10th Cir. 2009) (looking to statements board members made in their official

24   capacities to conclude that the enactment of a monument displaying the Ten

25   Commandments reflected an endorsement of religion); *Garrard*, 517 F.Supp.2d at

26   944-45 (considering, *inter alia*, testimony that certain witnesses recalled a stand-

27   alone copy of the Ten Commandments hanging in the county courthouse in holding

28   that the county's true purpose in displaying the Ten Commandments was religious,

and that the county's articulated secular purpose was nothing more than a litigation position).

Applying the correct standard, the objective evidence makes clear that the decision to add the cross to the Seal is unconstitutional:

(1) the cross was included on the 1957 Seal for religious purposes, *see* Exhs. 7-10, 12;

(2) the cross was removed from the 2004 Seal in acknowledgement of its religious significance, *see, e.g.*, *Vasquez*, 487 F.2d at 1257; Davies Decl., ¶ 4; Exhs. 11, 24, 82-83.

(3) Supervisors Antonovich and Knabe, who sponsored the 2014 resolution to add the Latin cross to the Seal, used the 1957 Seal with a cross at official County events *after* the 2004 Seal was adopted and used County resources to maintain a cross on the Seal; *see* Exhs. 26-34, 85-87;

(4) the supervisors made statements in their official capacities to constituents about the motion to add the cross to the Seal, including, for example, Supervisor Antonovich's comment that the *Los Angeles Times* was "without God" because it criticized the motion, *see* Exhs. 38, 42-43, 46-49; and

(5) the public made comments about the cross's addition to the Seal, which overwhelmingly interpreted the Supervisors' actions as sectarian, *see* Exhs. 38-51, 52 at 24, 53-55.

This evolutionary history is precisely the evidence the *McCreary* Court held must be part of the purpose inquiry, and it firmly establishes that the motive for adding the cross to the 2014 Seal was predominantly religious.

### B.    Plaintiffs' Evidence Does Not Constitute a "Heckler's Veto"

Defendants have also argued that Plaintiffs' evidence that the public perceived the act of adding a cross to the Seal as sectarian is an impermissible "heckler's veto" and cannot be considered.   *See* Dkt. No. 97.   Defendants' heckler's veto argument is, however, wholly inapposite.   A "'heckler's veto' is an impermissible content-based

CALDWELL
LESLIE &
PROCTOR

-23-

1   speech restriction where the *speaker* is silenced due to an anticipated disorderly or

2   violent reaction of the audience."  *See Rosenbaum v. City & Cnty. of San Francisco*,

3   484 F.3d 1142, 1158 (9th Cir. 2007) (emphasis added); *see also Santa Monica*

4   *Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1289-93 (9th Cir.

5   2015) (providing that the "heckler's veto doctrine [] applies in situations where a

6   particular speaker is silenced because his speech invites opposition, disorder, or

7   violence" and "every appellate decision applying the heckler's veto doctrine of which

8   we are aware involved the restriction of particular speech due to listeners' actual or

9   anticipated hostility to that speech").  In other words, a "heckler's veto" is a sort of

10  *claim* brought against a governmental entity that enacts regulations to silence certain

11  forms of speech, not a *defense* that can be invoked against those who seek to hold

12  their government accountable for its unconstitutional actions.

13          Even if the heckler's veto doctrine somehow applied to the claims in this

14  action—which it does not—Plaintiffs offer no evidence of a "heckler's veto."  There

15  has been no "disorderly or violent reaction" of the public.  To the contrary, Plaintiffs'

16  testimony and the communications of members of the public, both Christians and

17  non-Christians, are merely individual opinions about the meaning of the cross on the

18  county seal, which courts closely analyze under the *effects* prong of the *Lemon* test.

19  *See, e.g.*, *Trunk*, 629 F.3d at 1119 n.19; *Friedman*, 781 F.2d at 779-81 (evidence

20  leads "the average observer to the conclusion that the county government was

21  'advertising' the Catholic faith" where a rabbi, community members and experts

22  testified about the symbolism and divisiveness of the cross).  Defendants' invocation

23  of the heckler's veto doctrine is thus nothing more than an effort to silence those who

24  disagree with the County's actions, and to distract the Court from the primary reason

25  behind the Supervisors' decision to add the cross the 2014 Seal—religion.

26          **C.      The Statements of County Employees are Party Admissions**

27          Nor is there any merit to Defendants' contention that emails and memos sent

28  by County employees relating to the supervisors' continued use of the 1957 Seal on

County materials after 2004 are "flat-out hearsay" that must be excluded.  *See* Dkt.
No. 97.  Each of these documents, however—including those documents containing
statements by the supervisors—contains statements made by a County agent or
employee "concerning a matter within the scope of [his or her] agency or
employment," which fall squarely within the definition of "party admissions" under
Federal Rule of Evidence 801(d)(2)(D) and are therefore admissible.

> ### D.   *Defendants' Inexplicable Objection to Their Own Documents As Inauthentic Should Be Rejected Outright*

Finally, Defendants have objected to Plaintiffs' documentary evidence on
authenticity grounds, even though this evidence consists of County emails, memos
and other official County documents *Defendants themselves produced* in response to
Plaintiffs' discovery requests.[9]  *See, e.g.*, *Lexington Ins. Co. v. W. Pa. Hosp.*, 423
F.3d 318, 328-30 (3d. Cir. 2005) (noting that producing documents in response to a
discovery request is probative of their authenticity).  To the extent the Court harbors
any sincere doubt as to these documents' authenticity, Plaintiffs can easily call the
County's custodian of records to authenticate these documents at trial.

## VII.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court
enter judgment in their favor and enjoin the use of the 2014 Seal.

DATED:  October 27, 2015          Respectfully submitted,
                                  CALDWELL LESLIE & PROCTOR, PC

                                  ACLU FOUNDATION OF SOUTHERN
                                  CALIFORNIA

                                  By      /s/
                                       LINDA M. BURROW
                                  Attorneys for Plaintiffs

---

[9] The parties are currently meeting and conferring on this issue in an attempt to
resolve it prior to trial.

CALDWELL
LESLIE &
PROCTOR

-25-